## GREAT WEST PRINTING CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 9449.

Circuit Court of Appeals, Eighth Circuit.

July 18, 1932.

Rehearing Denied Sept. 7, 1932.

Arnold L. Guesmer, of Minneapolis, Minn., for petitioner.

Hayner N. Larson, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Richard W. Wilson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before STONE, KENYON, and VAN VALKENBURGH, Circuit Judges.

STONE, Circuit Judge.

This is a petition for review of an order of the Board of Tax Appeals affirming a redetermination by the Commissioner of the

income tax of petitioner for the year 1921. The only question presented by this petition is whether or not the Board was right in its determination that the taxable year of petitioner was a fiscal year ending May 31, 1921, or was, as contended by petitioner, the calendar year 1921.

Section 212(b) of the Revenue Act of 1921 (42 Stat. 227, 237) is, in part, as follows: "The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. If * * * taxpayer has no annual accounting period * * * the net income shall be computed on the basis of the calendar year."

Following the statutory requirements of the above quotation, it is clear that, if this petitioner had an annual accounting period, either fiscal or calendar, and its method of accounting was such that this period clearly reflected the income, that period was mandatory. The question, therefore, is whether petitioner had such period clearly reflecting income in 1921. Obviously, this is a question purely of fact, and, since the determination of the Board on questions of fact cannot be disturbed if there is any substantial evidence to support such determination (Phillips v. Commissioner, 283 U. S. 589, 600, 51 S. Ct. 608, 75 L. Ed. 1289; Franciscus Realty Co. v. Commissioner, 39 F.(2d) 583, 584, this court; Kendrick Coal & Dock Co. v. Commissioner, 29 F.(2d) 559, 564, this court), the only matter before us is whether there was substantial evidence to support the determination of the Board that the annual accounting period of petitioner was a fiscal year ending May 31, 1921.

Petitioner commenced business November 24, 1913. In accordance with its articles of incorporation and by-laws, the annual meetings of stockholders and directors were held in June or July of each year. At the stockholders' annual meetings in 1918, 1919, and 1920, financial statements were presented, accepted, and spread upon the minutes, reporting the profits for fiscal years ending May 31st. While the method of accounting of petitioner, between December, 1913, and June, 1927 (the period covered by the evidence), varied at times, yet certain features concerning determination of net profits, depreciation, and inventories are revealed by the evidence. There was a "statement" of profit and loss made at the end of each month, but net profits were determined on the books for different periods at different times, as follows: At the end of each month during the period beginning December, 1913, and ending May, 1914; for six-month periods ended November 30, 1914, and May 31, 1915; for fiscal years ended May 31 during the period beginning June 1, 1915, and ending May 31, 1921; for fiscal periods ended December 31 and May 31 during the period beginning June 1, 1921, and ending December 31, 1924, and the several net profits were transferred to the surplus and undivided profits account. Allowances for depreciation were accrued on the books monthly. Record of supplies and materials was kept in a "perpetual" inventory wherein new stock or materials were added and such as were used were deducted monthly. At the end of each month this record showed the amount of stock and material which should be on hand. A public accountant (witness for petitioner) testified it would be impossible for him to report the "actual accurate income" without having a check proving that the supplies shown by the book inventories were actually on hand and that this check required a physical inventory. Beginning with 1917, actual physical inventories were taken as of May 31 and the book inventory corrected and adjusted to conform therewith. Beginning with 1919, physical inventories were taken also as of December 31, but no adjustment of the book inventory was made thereon until 1921.

In addition to the above general sketch of petitioner's method of accounting, there are certain matters occurring in 1921. The regular annual meeting of the stockholders for 1921 was held on July 5th, when such a statement was presented reporting the net profits for the year ending May 31, 1921. On the same day, the regular annual meeting of the board of directors occurred, at which action was taken continuing the salary of the secretary-treasurer "for the coming year." Also a dividend was declared and the net profit transferred to the surplus account. Since no adjustment of inventory appeared on the books as of December 31, 1920, and the physical inventory of that date could not be produced, any statement of income for the calendar year 1921 would have to rest on the unadjusted book inventory of December 31, 1920.

From the above outline of the accounting methods of petitioner, it is clear that not only is there substantial evidence to sustain the conclusion of the Commissioner and the Board of Tax Appeals to the effect that the books were kept on an annual basis ending May 31, 1921, but such conclusion is compelled by the evidence.

■ Petitioner argues that evidence as to accounting methods except in the year 1921 is inadmissible. While the point in issue is the accounting method employed by petitioner during that year, yet the accounts were of a continuing business beginning years before and for years thereafter, and were, necessarily, continuous in their very nature. While petitioner might have changed its annual period, yet the question is what it actually did, and, clearly, the entire story is pertinent and useful upon that issue.

■ Also petitioner argues that its books were so kept as to permit a showing of income at the end of any month, and therefore the calendar year was mandatory for tax purposes under the statutory provision that, where the taxpayer "has no annual accounting period * * * the net income shall be computed on the basis of the calendar year." The search here is not for what could have been done, but for what was done, and it is clear that petitioner did have an annual accounting period ending May 31, which clearly reflected annual income. In this connection, it is well to remember that an accurate statement of income involved the verity of the inventory, and the book inventory was not proven by a physical inventory at the end of every month.

■■ Also it is argued that the books clearly reflected the income for the calendar year 1921, and the tax return was made on that basis. Since determination of the income depended, in part, upon the inventory as of December 31, 1920 (or January 1, 1921), and since the evidence shows the necessity of a check (through a physical inventory carried to the books) in order accurately to reflect income, there is some question as to the books clearly reflecting the income for the calendar year 1921, but, be that as it may, the test is the year (fiscal or calendar) actually used in the business and shown in the books, and not the possibility of the use of some other annual period. Nor has the filing of the tax return any significance because the statute leaves no option as to that to the taxpayer if his books are kept on a particular annual basis. The taxpayer might have based his accounting period upon any annual period, closing with the end of any month, but it is upon this method actually so selected by the taxpayer that the statute automatically operates.

■ The determination as to whether the taxpayer has an annual accounting period, and as to what such period is, can rarely be made upon any single circumstance (as an annual stockholders' meeting), but usually, as here, must be gathered from all of the circumstances bearing upon the accounting method actually employed.

The order appealed from is affirmed.