ELGIN COMPRESS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CAPITAL COMPRESS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SAN MARCOS COMPRESS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 49302–49304. Promulgated October 11, 1934.

*Chas. A. Perlitz, Jr., Esq.*, for the petitioners.
*P. A. Bayer, Esq.*, for the respondent.

OPINION.

ADAMS: These proceedings, which have been consolidated for hearing and decision, are brought by the trustees for three Texas corporations, seeking a review of assessments made by the Commissioner, petitioners contending that such assessments cover the period May 1 to July 30, 1927, only, the respondent contending that such assessments cover the period May 1, 1927, to April 30, 1928. Petitioners present other questions which in view of our holding here it will not be necessary for us to decide. The assessments were made under section 279 (a) of the Revenue Act of 1926, and were for the period May 1 to July 30, 1927. The amounts are as follows:

| | |
|---|---|
| Elgin Compress Co | $1,650.31 |
| Capital Compress Co | 8,763.62 |
| San Marcos Compress Co | 6,409.50 |

In the case of the Elgin Compress Co. the notice of deficiency included the fiscal years ended April 30, 1926 and 1927, but no deficiency was asserted for those years.

The facts are stipulated as hereinafter set out.

On April 28, 1930, the Commissioner addressed each of the petitioners a notice of deficiency, the notices being identical in each instance except as to the details, that addressed to the Elgin Compress Co. being typical and its material parts as follows:

In accordance with the provisions of Sec. 279 (a) of the Revenue Act of 1926, there has been assessed against you an income and profits tax amounting to $1,650.31 for the * * * period May 1, 1927, to July 30, 1927, the details of which are set forth in the statement attached.

In the statement attached to the latter part of such letter the Commissioner says:

*     *     *     *     *     *     *

The adjustments recommended by the agent have been approved by this office, with the exception of the computation of tax. Since it is held that the final return filed complies with the requirements of the law and regulations with respect to the period covered, the computation of tax liability has been made on the basis of the period ended July 30, 1927, instead of February 29, 1928, which was the date used by the revenue agent.

*     *     *     *     *     *     *

Under the heading of "Explanation of Items Changed" said statement reads:

1. Omitted profit on sale of land, buildings and machinery on September 27, 1927, added to taxable income,

*     *     *     *     *     *     *

2. Adjustment has been made under article 112, Regulations 69, for income and expenses after July 30, 1927, not on books, received from successor from accrued charges and prepaid expenses, insurance, etc., * * *

3. Discount on notes received for sale of plant has been allowed as a deduction from taxable income under Art. 561 of Regulations 69.

*     *     *     *     *     *     *

On December 8, 1933, petitioners filed a second amended petition, in which they make the following allegation:

(3) That the deficiency letter marked Exhibit "A", covered the taxable period May 1, 1927, to July 30, 1927, and the tax sought to be assessed is based upon a profit, if any, from a sale of properties which was consummated on September 27, 1927, according to the deficiency letter, and the Commissioner erred in assessing income tax for the period covered in the deficiency letter when the letter itself shows if any profit was realized it was subsequent to the taxable period covered in the letter.

The stipulation of facts may be summarized as follows:

Petitioners, and each of them, were incorporated under the laws of Texas, and for many years prior to May 1927 had been engaged in the business of operating cotton compresses in that state.

The stock in each of the corporations was controlled by W. T. Caswell, E. H. Perry, D. C. Reed, and D. T. Iglehart. Iglehart died

in May 1927. On July 7, 1927, resolutions were adopted by the board of directors of the three companies authorizing the dissolution of the companies.

On July 16, 1927, agreements and consents in writing to the dissolution of the companies were executed by the officers and stockholders of the companies, and on July 30, 1927, these consents in writing were filed with the Secretary of State of the State of Texas, and he certified on that date that the corporations were dissolved. At the time of the dissolution there were no debts owing by the corporation, except a few minor expenses. The directors, acting as trustees, continued to operate the presses, and negotiations for the sale of the three corporations, which had been started prior to dissolution, were continued.

On August 17, 1927, Caswell, Perry, and Reed, as trustees, entered into a contract for the sale of the properties of the three companies to the Aransas Compress Co., a corporation, and they executed deeds transferring all of the assets of said companies, such deeds being executed in the name of the corporation, acting by its officers, and also signed by Caswell, Perry, and Reed as trustees for the creditors and stockholders of the corporations. The sale was actually consummated on September 27 and 28, 1927, and there was received as consideration for such properties $40,000 in cash, $84,000 in capital stock, and $111,000 in promissory notes, payable over a period of five years. Immediately after the sale was closed the notes were sold by the trustees at a small discount and all the cash received in the sale, as well as that derived from the sale of notes and stock, was immediately paid and delivered to the stockholders of the three corporations according to their stock interest therein. These payments of cash were made by checks dated October 11, 1927, and signed by D. B. Johnson, secretary and treasurer, for the trustees of each of the corporations. Each of the three companies kept its books and filed a separate Federal income tax return on a fiscal year basis, ending April 30 of each year.

On or about October 15, 1927, each of the three companies filed a corporate income tax return for the period beginning May 1, 1927, and ending July 30, 1927. The sale of the properties above referred to was not reported in these returns. No income tax returns were filed subsequent to that time by the three corporations, or by the trustees acting for the corporations.

Petitioners contend that the assessments of the deficiencies as set out in the Commissioner's letters are void by reason of the fact that they wholly fail to cover any period during which gain could have possibly occurred from the transaction, and that no deficiency letters have been issued covering any period after July 30, 1927, the date when the transfer of the assets was accomplished. They con-

tend that under the sections of the revenue act the Board does not have before it a case in which it can determine any deficiency for the period in which the transaction occurred from which respondent contends additional income was received.

Respondent admits that he was in error in using the dates May 1, 1927, to July 30, 1927, in the notices of deficiency, but contends that regardless of the period asserted in the deficiency letters the assessments of the deficiencies were computed on the basis of the incomes for the full fiscal year of the petitioners and were not confined to the period stated in the letter. He contends that his error in dates was not a misleading one, that the letters purported obviously to cover all transactions occurring in the fiscal year May 1, 1927, to April 30, 1928. To sustain this proposition he cites many authorities which he contends are applicable here, among the number being *Fred A. Hellebush*, 24 B.T.A. 660; affd., 65 Fed. (2d) 902. In that case the deficiency letter covered the period January 1 to April 19, 1927, and included therein gain from the sale of corporate assets occurring subsequent to April 19, although according to the findings of fact no final negotiations for the sale of the assets had occurred prior to April 20. We do not believe that any of the cases cited by respondent are in point, when their facts are examined, except the *Hellebush* case. In that case the question here presented does not seem to have been presented, discussed, or considered.

The case of *Mrs. Grant Smith*, 26 B.T.A. 1178, was that of a dissolved corporation, dissolution having occurred on January 12, 1925. The trustees in dissolution filed a return covering the period January 12 to December 31, 1925. The Commissioner computed a deficiency for the period January 1 to January 12, 1925. Liquidation of the corporation was not completed by January 12, but extended throughout and beyond 1925. In that case we said:

Under section 239(a), Revenue Act of 1926, and article 622, the trustees in dissolution of the Smith Securities Company should have filed a return for the corporation covering the entire calendar year 1925. Instead, the stipulation of facts shows that the return which they filed on Form 1120 covered the period January 12, 1925, to December 31, 1925. This was wrong. But there is no warrant in law for the Commissioner's action in computing a deficiency for the period January 1 to January 12, 1925, liquidation of the corporation not having been completed by January 12, 1925, but extending throughout and beyond 1925. If there is any deficiency for 1925 it must be for the entire calendar year, and the Commissioner has made no such determination. Of course, if we had sustained the Commissioner's contention that liquidation of the Smith Securities Company was completed January 12, 1925, his action in computing a deficiency for that period would be correct. But, where a corporation is dissolved during a particular calendar year and its affairs remain in the hands of liquidating trustees for the remainder of the year, we know of nothing in the applicable revenue act and the Commissioner's regulations thereunder which warrants dividing up the calendar year into two taxable periods, viz., the first period covering the time prior to the date of dissolution of the

corporation and the second period covering from the time when trustees in liquidation took charge to the end of the calendar year.

In O.D. 821, C.B. 4, p. 279, it was said:

> Section 1764, Wisconsin Statutes (1915) provides that the corporate existence of a dissolved corporation shall be continued for the purpose of liquidating its assets and winding up its affairs. It is held, therefore, that profit resulting from the sale of assets of a Wisconsin corporation in process of liquidation is subject to income and excess profits taxes in the same manner as profits derived from the active operation of the corporation.
>
>   *     *     *     *     *     *     *
>
> Therefore, the responsibility for filing appropriate returns for the corporation and paying taxes shown thereby to be due devolves upon the trustees in liquidation or such other legal administrators as have charge of the property and affairs of the corporation during the period of liquidation. They must make returns of income for such corporation in the same manner and form as an active corporation. Conversely, they are not required to file returns as fiduciaries.

See also O.D. 73, C.B. 1, p. 235; O.D. 873, C.B. 4, p. 308; I.T. 1814, C.B. 11–2, p. 210.

The above citations are in conformity with the applicable statutes, we think, and hence we hold in favor of petitioners * * *.

If the Smith Securities Company owes a deficiency for 1925, the Commissioner must determine it for the entire calendar year 1925 and not for the 12-day period January 1 to January 12, 1925.

These taxpayers made the returns covering the period May 1 to July 30, 1927, evidently upon the theory that the taxable period of the corporations closed on July 30 by reason of their dissolution. They were in error as to this. The stipulation of facts shows that the officers and directors of the corporations filing these petitions continued as trustees in liquidation at least until October 1927, and to that extent, at least until that time, and for that purpose the corporations continued in existence until liquidation was completed.

It follows that the returns filed by the petitioners for the period May 1 to July 30, 1927, were not authorized by law. They were not legal returns and should not have been considered as such.

Petitioners contend that the return filed by them was legal and proper. As held above, they were in error in this.

Article 1388 of the 1925 Revised Statutes of Texas reads as follows:

> *Liquidation by officers.*—Upon the dissolution of a corporation, unless a receiver is appointed by some court of competent jurisdiction, the president and directors or managers of the affairs of the corporation at the time of its dissolution shall be trustees of the creditors and stockholders of such corporation, with power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them after paying all just and reasonable expenses; and for this purpose they may in the name of such corporation, sell, convey, and transfer all real and personal property belonging to such

company, collect all debts, compromise controversies, maintain or defend juridical proceedings, and exercise full power and authority of said company over such assets and property. Said trustees shall be severally responsible to the creditors and stockholders of such corporation to the extent of its property and effects that shall have come into their hands.

Under this provision of the Texas statutes it has been held in many cases that the corporate entity continues for the purposes set forth in the article above set out. See *Taylor Oil & Gas Co.* v. *Commissioner*, 47 Fed. (2d) 108.

Petitioners contend that under article 651 of Regulations 69 the returns were proper and were duly filed. In this petitioners are in error.

Article 651 reads as follows:

*Time and place for filing returns.* * * * A corporation going into liquidation during any taxable year *may upon the completion of such liquidation prepare* a return covering its income for the fractional part of the year during which it was engaged in business and may immediately file such return with the collector. * * * [Italics supplied.]

As shown above, liquidation had not been completed on July 30, 1927, but, indeed, according to the facts as stipulated, had only begun.

We conclude that the returns filed by petitioners for the period May 1 to July 30, 1927, were not such returns as are required by the revenue act, and that the deficiencies determined on the basis of such returns and for that period by the respondent were not authorized by law.

Reviewed by the Board.

*Judgment will be entered for the petitioners.*